## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PREMLATA VAZIRANI,<br><br>       Plaintiff,<br><br>   v.<br><br>ADVANCED MICRO DEVICES, INC.,<br>JOHN E. CALDWELL, NORA M. DENZEL,<br>MARK DURCAN, MICHAEL GREGOIRE,<br>JOSEPH A. HOUSEHOLDER, JOHN W.<br>MARREN, LISA T. SU, and ABHI<br>TALHWALKAR<br>       Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF<br>FEDERAL SECURITIES LAWS** |

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1.      This action concerns a proposed transaction ("Proposed Transaction") announced on October 27, 2020, pursuant to which Advanced Micro Devices, Inc. ("AMD" or the "Company") will acquire Xilinx, Inc. ("XLNX" or "Xilinx").

2.      On October 26, 2020, AMD's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with XLNX.  Pursuant to the terms of the Merger Agreement, each share of Xilinx common stock will be converted into approximately 1.7234 shares of AMD common stock (the "Merger Consideration").  Upon closing of the Proposed Transaction, current stockholders of Xilinx will own approximately 26% of the outstanding common stock of AMD, while current stockholders of AMD are expected to own approximately 74% of AMD.

3.      On December 4, 2020, in order to convince AMD's shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading preliminary S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.      In addition, a special meeting of AMD's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so AMD stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue

will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, an AMD shareholder.

10.     Defendant AMD is a Delaware corporation and a party to the Merger Agreement. AMD shares are traded on the NASDAQ under the ticker symbol "AMD."

11.     Defendant John E. Caldwell is Chairman of the Board of the Company.

12.     Defendant Nora M. Denzel is a director of the Company.

13.     Defendant Mark Durcan is a director of the Company.

14.     Defendant Michael Gregoire is a director of the Company.

15.     Defendant Joseph A. Householder is a director of the Company.

16.     Defendant John W. Marren is a director of the Company.

17.     Defendant Dr. Lisa T. Su is a director of the Company.

18.     Defendant Abhi Talwalker is a director of the Company.

## FACTS

19.     AMD is a semiconductor company based in Santa Clara, CA, that develops high-performance computing and visualization products for business and consumer markets. The company also produces flash memories, graphics processors, motherboard chip sets, and a variety of components used in consumer electronics goods.

3

20.     Xilinx develops highly flexible and adaptive processing platforms that enable rapid innovation across a variety of technologies - from the cloud to the edge and to the endpoint. Xilinx is the inventor of the field programmable gate array ("FPGA") and Adaptive SoCs, designed to deliver the most dynamic processor technology in the industry.  Xilinx is incorporated under the laws of Delaware and has its principal executive offices located at 2100 Logic Drive, San Jose, California 95124. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "XLNX."

21.     On October 26, 2020, AMD's Board caused the Company to enter into the Merger Agreement.

22.     On October 27, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

**SILICON VALLEY, CALIF. — Oct. 27, 2020 —** AMD (NASDAQ: AMD) and Xilinx (NASDAQ: XLNX) today announced they have entered into a definitive agreement for AMD to acquire Xilinx in an all-stock transaction valued at $35 billion. The combination will create the industry's leading high performance computing company, significantly expanding the breadth of AMD's product portfolio and customer set across diverse growth markets where Xilinx is an established leader. The transaction is expected to be immediately accretive to AMD margins, EPS and free cash flow generation and deliver industry-leading growth. The acquisition brings together two industry leaders with complementary product portfolios and customers. AMD will offer the industry's strongest portfolio of high performance processor technologies, combining CPUs, GPUs, FPGAs, Adaptive SoCs and deep software expertise to enable leadership computing platforms for cloud, edge and end devices. Together, the combined company will capitalize on opportunities spanning some of the industry's most important growth segments from the data center to gaming, PCs, communications, automotive, industrial, aerospace and defense. "Our acquisition of Xilinx marks the next leg in our journey to establish AMD as the industry's high performance computing leader and partner of choice for the largest and most important technology companies in the world," AMD President and CEO Dr. Lisa Su said. "This is truly a compelling combination that will create significant value for all stakeholders, including AMD and Xilinx shareholders who will benefit from the future growth and upside potential of the combined company. The Xilinx team is one of the strongest in the industry and we are thrilled to welcome them to the AMD family. By combining our worldclass engineering teams and deep domain expertise, we will create an industry leader

with the vision, talent and scale to define the future of high performance computing."

"We are excited to join the AMD family. Our shared cultures of innovation, excellence and collaboration make this an ideal combination. Together, we will lead the new era of high performance and adaptive computing," said Victor Peng, Xilinx president and CEO. "Our leading FPGAs, Adaptive SoCs, accelerator and SmartNIC solutions enable innovation from the cloud, to the edge and end devices. We empower our customers to deploy differentiated platforms to market faster, and with optimal efficiency and performance. Joining together with AMD will help accelerate growth in our data center business and enable us to pursue a broader customer base across more markets." With a combined team of 13,000 talented engineers and over $2.7 billion of annual[1] R&D investment, AMD will have additional talent and scale to deliver an even stronger set of products and domain-specific solutions.

23.    The Merger Agreement provides that Thrones Merger Sub, Inc., a wholly owned subsidiary of AMD ("Merger Sub") will merge with and into Xilinx, with Xilinx as the surviving corporation and a wholly owned subsidiary of AMD.

24.    At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

each share of Company Common Stock that is issued and outstanding immediately prior to the Effective Time shall be converted into the right to receive, without interest, a number of validly issued, fully paid and non-assessable shares of Parent Common Stock equal to the Exchange Ratio (the per share consideration payable in accordance with this Section 1.5(b), the "Merger Consideration")

25.    It is imperative that the Company shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote

26.    Section 4.3 of the Merger Agreement has a "no solicitation" clause that prevents AMD from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

Section 4.3      Parent No Solicitation.

5

(a) Parent will not, and Parent will cause each of its Subsidiaries and its and their respective Representatives not to, except as expressly permitted by this Section 4.3 or Section 4.6, directly or indirectly:

i.   solicit, initiate, knowingly encourage or knowingly facilitate any inquiries regarding, or the submission or announcement by any Person of, any proposal or offer that constitutes, or would reasonably be expected to lead to, any Parent Acquisition Proposal;

ii.  furnish any information regarding Parent or any Subsidiary of Parent (other than to the Company and its Subsidiaries), or afford access to Parent's or its Subsidiaries' Representatives, books, records or property, in each case, in connection with, for the purpose of soliciting, initiating, encouraging or facilitating, or in response to, any inquiry, proposal or offer that constitutes or would reasonably be expected to lead to a Parent Acquisition Proposal;

iii. engage in, enter into, continue or otherwise participate in any discussions or negotiations with any Person with respect to any Parent Acquisition Proposal or any inquiry, proposal or offer that would reasonably be expected to lead to any Parent Acquisition Proposal; or

iv.  approve, adopt, recommend, agree to or enter into, or propose to approve, adopt, recommend, agree to or enter into, any letter of intent, memorandum of understanding or similar document, agreement, commitment, or agreement in principle with respect to any Parent Acquisition Proposal; or

v.   resolve or agree to do any of the foregoing;

bona fide written Parent Acquisition Proposal after the date hereof that did not result from any breach of this Section 4.3(a) or Section 4.3(c) by Parent, any of its Subsidiaries or any of its or their respective Representatives if: (A) prior to taking any such action, the Parent Board determines in good faith, after consultation with Parent's outside legal counsel and its financial advisor, that such Parent Acquisition Proposal either constitutes a Parent Superior Proposal or would reasonably be expected to lead to a Parent Superior Proposal and that failure to engage in such discussions or negotiations, or provide such information, would reasonably be expected to be inconsistent with the Parent Board's fiduciary duties to Parent and its stockholders under applicable Legal Requirements; and (B) prior to providing any information regarding Parent or any Subsidiary of Parent to such third party in response to such Parent Acquisition Proposal, Parent receives from such third party (or there is then in effect with such party) an executed confidentiality agreement that contains nondisclosure provisions that are at least as restrictive of such third party as the Non-Disclosure Agreement and that does not prohibit compliance by Parent with this Section 4.3. Prior to or substantially concurrently with providing any non-

public information to such third party, Parent shall make such non-public information available to the Company (to the extent such non-public information has not been previously made available by Parent to the Company). Parent shall promptly (and in any event within 24 hours) inform the Company if Parent furnishes non-public information and/or enters into discussions or negotiations as provided for in this Section 4.3(a) and will keep the Company reasonably informed in writing, on a current basis (and, in any event, within 24 hours), of the status and terms of any Parent Acquisition Proposal (including any material changes to the terms thereof) and the status of any discussions and negotiations with respect thereto.

27.     In addition, Section 6.3 of the Merger Agreement requires AMD to pay up to a $1,500,000,000 "termination fee" in the event this agreement is terminated by AMD and improperly constrains the Company from obtaining a superior offer.  Such a termination fee is excessive, vastly more expensive than the industry standard for similar transactions, and unduly restrictive to AMD's ability to consider other offers.

28.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

29.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

30.     First, the Registration Statement omits material information regarding AMD's and XLNX's financial projections.

31.     With respect to the AMD Projections, the Registration Statement fails to disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Adjusted EPS; and (iii) Unlevered Free Cash Flow. 30.

32.     With respect to the AMD Adjusted Xilinx Projections, the Registration Statement fails to disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA unburdened by SBC; (ii) Adjusted

EBITDA burdened by SBC; (iii) Adjusted EPS unburdened by SBC; (iv) Adjusted EPS burdened by SBC; and (v) Unlevered Free Cash Flow.

33.     With respect to the XLNX's projections, the Registration Statement fails to disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Adjusted EPS; and (iii) Unlevered Free Cash Flow.

34.     With respect to the XLNX adjusted AMD Projections, the Registration Statement fails to disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA unburdened by SBC; (ii) Adjusted EBITDA burdened by SBC; (iii) Adjusted EPS unburdened by SBC; and (iv) Unlevered Free Cash Flow.

35.     The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

36.     Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisors DBO Partners LLC ("DBO") and Credit Suisse Securities (USA) LLC  ("Credit Suisse") and XLNX's financial advisors BofA Securities, Inc. ("BofA") and Morgan Stanley & Co. LLC  ("Morgan Stanley") in connection with the Proposed Transaction.

37.     With respect to DBO's *Selected Comparable Public Company Analysis – Stand-Alone Xilinx*, the Registration Statements fails to include the individual multiples and metrics for

the companies observed by BDO in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

38.     With respect to DBO's *Selected Transactions Large Semiconductor Analysis – Stand-Alone Xilinx*, the Registration Statements fails to include the individual multiples and metrics for the transactions observed by BDO in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

39.     With respect to DBO's *Discounted Equity Value Analysis of Xilinx – Stand-Alone Xilinx*, the Registration Statements fails to include (i) DBO's full basis for applying a NTM P/E multiple reference range of 25.0x to 32.5x to Xilinx's estimated next-twelve-months earnings per share and (ii) the individual inputs and assumptions underlying the range of discount rates ranging from 8.0% to 10.0%.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

40.     With respect to DBO's *Discounted Cash Flow Analysis of Xilinx – Stand-Alone Xilinx*, the Registration Statements fails to include (i) DBO's full basis for applying an exit multiple range of 25.0x to 32.5x applied to Xilinx's estimated next-twelve-months earnings per share, (ii) the individual inputs and assumptions underlying the range of discount rates ranging from 7.5% to 9.5%, and (iii) terminal value.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

41.     With respect to DBO's *Selected Comparable Public Company Analysis – Stand-*

*Alone AMD*, the Registration Statements fails to include the individual multiples and metrics for the companies observed by BDO in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

42.     With respect to DBO's *Discounted Equity Value Analysis of AMD – Stand-Alone AMD*, the Registration Statements fails to include (i) DBO's full basis for applying a NTM P/E multiple reference ranges of 30.x to 37.5x and 27.5x to 35.0x to AMD's estimated next-twelve-months earnings per share as of the end of 2023 and estimated next-twelve-months earnings per share as of the end of 2024, respectively,  and (ii) the individual inputs and assumptions underlying the range of discount rates ranging from 8.5% to 10.5%.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

43.     With respect to DBO's *Discounted Cash Flow Analysis of AMD – Stand-Alone AMD*, the Registration Statements fails to include (i) DBO's full basis for applying an exit multiple range of 27.5x to 35.0x applied to AMD's estimated next-twelve-months earnings per share, (ii) the individual inputs and assumptions underlying the range of discount rates ranging from 8.5% to 10.5%, and (iii) terminal value.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

44.     With respect to DBO's *Discounted Cash Flow Analysis of Synergies (Standalone)*, the Registration Statements fails to include (i) DBO's full basis for applying perpetuity growth rates ranging from 2.0% to 4.0%, (ii) the individual inputs and assumptions underlying the range of discount rates ranging from 7.5% to 10.5%, (iii) terminal value of the net synergies, and (iv) the

number of fully-diluted outstanding shares of Xilinx common stock.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

45.     With respect to DBO's *Selected Transactions—Large Stock Transactions Premiums Analysis*, the Registration Statements fails to include the individual premiums for the transactions observed by BDO in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

46.     With respect to Credit Suisse's *Discounted Cash Flow Analysis Regarding Xilinx*, the Registration Statements fails to include (i) Credit Suisse's full basis for applying a range of terminal value multiples of 17.0x to 22.0x and (ii) the individual inputs and assumptions underlying the range of discount rates ranging from 7.5% to 9.5%, and (iii) terminal value.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

47.     With respect to Credit Suisse's *Discounted Cash Flow Analysis Regarding Xilinx Including Synergies Estimates*, the Registration Statements fails to include (i) Credit Suisse's full basis for applying a range of terminal value multiples of 17.0x to 22.0x and (ii) the individual inputs and assumptions underlying the range of discount rates ranging from 7.5% to 9.5%, and (iii) terminal value.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

48.     With respect to Credit Suisse's *Discounted Cash Flow Analysis Regarding AMD*,

the Registration Statements fails to include (i) Credit Suisse's full basis for applying a range of terminal value multiples of 22.0x to 27.0x and (ii) the individual inputs and assumptions underlying the range of discount rates ranging from 8.5% to 10.5%, and (iii) terminal value.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

49.     With respect to Morgan Stanley's *Relative Discounted Equity Value Analysis*, the Registration Statement fails to disclose: (i) the line items underlying AMD and Xilnix's earnings per share utilized by Morgan Stanley for its analysis; (ii) the inputs and assumptions underlying the discount rate of 9.3% for AMD; and (iii) the inputs and assumptions underlying the discount rate of 6.8% for Xilinx.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

50.     With respect to Morgan Stanley's *Relative Discounted Cash Flow Analysis* the Registration Statement fails to include: (i) all line items underlying the stand-alone unlevered after tax free cash flows; (ii) the terminal values of both companies; (iii) the inputs and assumptions underlying the terminal EBITDA multiples ranging from 11.0x to 15.0x; (iv) the inputs and assumptions underlying the discount rates ranging from 8.3% to 10.3% for AMD; (v) the inputs and assumptions underlying the discount rates ranging from 6.8% to 7.8% for Xilinx; and (vi) the net debt of AMD and Xilinx.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

51.     With respect to BofA's *Selected Publicly Traded Companies Analysis*, the

Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analyses.   This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

52.     With respect to BofA's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each transaction observed in the analyses.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

53.     With respect to BofA's *Discounted Cash Flow Analysis* for both Xilinx and AMD, the Registration Statement fails to disclose: (i) the line items underlying the standalone unlevered, after-tax free cash flows that Xilinx was forecasted to generate during Xilinx's third and fourth quarters of fiscal year 2021 and fiscal years 2022 through fiscal year 2032; (ii) all line items underlying the standalone unlevered, after-tax free cash flows that AMD was forecasted to generate during AMD's fourth quarter of fiscal year 2020 and fiscal years 2021 through 2031; (iii) the terminal values for Xilinx and AMD; (iv) the inputs and assumptions underlying the perpetuity growth rates of 2.75% to 3.25%; (v) the inputs and assumptions underlying the perpetuity growth rates of 3.50% to 4.00%, and (vi) the inputs and assumptions underlying the discount rates ranging from 6.5% to 8.5% and from 8.50% to 10.50%.  This information must be disclosed to make the Registration Statement not materially misleading to AMD stockholders and provide stockholders with full and relevant information in considering how to vote.

54.     The omission of the above-referenced material information renders the Registration Statement false and misleading.

55.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

58.     Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

59.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were

14

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

60.     The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement.  Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

61.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

## (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did

influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

66.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

67.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control

16

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

69. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 23, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*

18